IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMERICAN CARDIO, LLC, an Case No. 6:12-cv-00457-AA
Oregon limited liability OPINION AND ORDER
company,

    Plaintiff,

  v.

ITAMAR-MEDICAL, INC., a
Delaware corporation,

    Defendant.

---

Brian W. Grimm
David B. Robbins
Perkins Coie LLP
1201 Third Ave., Suite 4900
Seattle, Washington 98101
    Attorneys for plaintiff

David B. Markowitz
Kerry J. Shepard
Joseph L. Franco
Markowitz, Herbold, Glade & Mehlhaf P.C.
1211 S.W. Fifth Ave., Suite 3000
Portland, Oregon 97204
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant Itamar-Medical, Inc. moves to compel arbitration of plaintiff American Cardio, LLC's claims pursuant to Fed. R. Civ. P. 12(b)(1) and the Federal Arbitration Act ("FAA"). Defendant also requests that all judicial proceedings be stayed or dismissed pending arbitration. For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

Defendant is a Delaware corporation that is wholly owned by Itamar-Medical, Ltd., an Israeli company that produces medical devices used to diagnose cardiovascular disease. Plaintiff is an Oregon limited liability company in the business of distributing medical and diagnostic devices.

On December 3, 2010, the parties entered into a distribution agreement (the "Agreement"), in which plaintiff agreed to build a distribution network for defendant's product, the EndoPat,[1] in North America. In exchange, plaintiff became the exclusive distributor of the EndoPat, provided that plaintiff purchased and paid for a specified number of devices within a certain period.

Prior to the Agreement, defendant had a nominal market presence in North America. Pursuant to the parties' contract, plaintiff invested hundreds of thousands of dollars, as well as thousand of hours, in developing a distribution network for the

---

[1] The EndoPat is a non-invasive diagnostic test used to determine whether the lining of blood vessels, the endothelium, is functioning properly.

Page 2 - OPINION AND ORDER

EndoPat. This network ultimately spanned twenty-five states throughout North America.

Within a few months of the initiation of the parties' relationship, however, plaintiff failed to purchase the specified number of devices required under the Agreement. On July 1, 2011, defendant informed plaintiff of its breach and requested that it cure the breach within thirty days. On August 8, 2011, defendant notified plaintiff that it's exclusivity rights would be terminated for failure to cure the breach.

Regardless, the parties continued working towards "a productive working relationship under a modified construct." Slosman Decl. Ex. 3. As such, between August 2011, and December 2011, the parties engaged in numerous communications in an attempt to re-negotiate the Agreement. On November 23, 2011, defendant proposed a set of reformulated terms; in the same letter, defendant again advised plaintiff that it was in breach of the minimum sales requirement and, as a result, the Agreement would be terminated within 60 days.

On December 19, 2011, plaintiff sent a letter to defendant that described terms very different from those set forth in defendant's November 23, 2011 letter. On January 5, 2012, plaintiff sent two letters to defendant. One letter set forth a second set of proposed terms for a new agreement (the "Settlement Letter"); the other included a list of defendant's alleged breaches and demanded arbitration (the "Demand Letter").

On January 9, 2012, defendant responded to plaintiff's letters

Page 3 - OPINION AND ORDER

(the "Response Letter"). Defendant sought clarification regarding the seemingly inconsistent stances taken between the Settlement Letter and the Demand Letter. Defendant also remarked that plaintiff's demand for arbitration was premature because the Agreement's fifteen-day period for amicable resolution of any dispute had not yet lapsed since new issues were raised in the Demand Letter. In addition, defendant noted generally that some of plaintiff's claims fell outside of the scope of the Agreement's arbitration provision (the "Arbitration Clause"). Accordingly, defendant characterized the Demand Letter as "mere posturing, in the mistaken belief that [plaintiff's] settlement position will be enhanced." Kleinhendler Decl. Ex. 4 ("Response Letter"), at 1. Defendant nonetheless invited further discussion regarding the resolution of the parties' issues.

Plaintiff neither replied to the Response Letter nor initiated arbitration. Rather, on March 13, 2012, plaintiff filed a complaint in this Court, alleging: (1) breach of contract; (2) breach of the implied duty of good faith and fair dealing; and (3) tortious interference with business relations or economic advantage. Subsequently, defendant moved to compel arbitration.

## STANDARDS

Where the court lacks subject-matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). A motion to compel arbitration is appropriately raised pursuant to Fed. R. Civ. P. 12(b)(1). Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka, 599 F.3d 1102, 1104 (9th Cir. 2010). The allegations in

the complaint are taken as true pursuant to a motion to compel arbitration. <u>Brown v. Dillard's, Inc.</u>, 430 F.3d 1004, 1006 (9th Cir. 2005).

## DISCUSSION

Defendant requests that this Court compel arbitration of plaintiff's claims. Plaintiff opposes enforcement of the Arbitration Clause because defendant's Response Letter breached or waived that provision. As such, the present dispute centers on whether plaintiff properly initiated arbitration and whether defendant refused that request or otherwise waived its right to arbitrate.

### I.   Terms of the Agreement

Under the Agreement, "[a]ny disputes that are not resolved amicably within fifteen (15) calendar days after written notice, shall be resolved by arbitration in accordance with the Rules of Arbitration set forth by the New York State Code." Kleinhendler Decl. Ex. 1 ("Agreement"), at ¶ 13.10. Once a demand for arbitration is made in accordance with New York's Rules of Arbitration ("ROA"), the parties are required to "appoint an arbitrator by mutual agreement." <u>Id.</u> Failure to do so "within thirty (30) days after the receipt of a demand for arbitration" results in each party selecting their own arbitrator and then "the two Party-appointed arbitrators shall select a third." <u>Id.</u>

Notwithstanding "the referral of any dispute, controversy or claim arising out of or in connection with [the] Agreement to arbitration," the parties "remain free to seek interim, injunctive

or conservatory relief, provided that the order of the relevant judicial authority shall not in any way prejudice the [arbitration] tribunals' power to settle the dispute." Id.

The Agreement also states that "failure by either party to enforce any provision . . . on one occasion shall in no way constitute a waiver or affect its right to require the performance thereof by the other party." Id. at ¶ 13.4.

## II. Analysis

The FAA "governs the question of arbitrability."[2] Republic of Nicar. v. Standard Fruit Co., 937 F.2d 469, 474-75 (9th Cir. 1991), cert. denied, 503 U.S. 919 (1992); Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 23-24 (1983). Under the FAA, arbitration clauses in contracts involving transactions in interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." 9 U.S.C. § 2. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses, 460 U.S. at 24-25. As such, "[t]he standard for demonstrating arbitrability is not high." Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719 (9th Cir. 1999).

Nevertheless, "the FAA leaves no place for the exercise of

---

[2] The Agreement's choice of law provision does not displace the FAA when determining the threshold question of arbitrability. See Cape Flattery Ltd. v. Titan Mar., LLC, 647 F.3d 914, 920-21 (9th Cir. 2011), cert. denied, 132 S.Ct. 1862 (2012).

Page 6 - OPINION AND ORDER

discretion by a district court, but instead mandates that district courts direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Id.; see also 9 U.S.C. § 3. Thus, in deciding whether to compel arbitration, the court may not review the merits of the underlying dispute; instead, the court may only inquire into: (1) whether there exists a valid agreement to arbitrate; (2) whether the parties' dispute falls within their arbitration agreement; and (3) whether there exists "a defense that would be available to a party seeking to avoid the enforcement of any contract." Brown, 430 F.3d at 1010; see also Kilgore v. KeyBank Nat'l Ass'n, 673 F.3d 947, 955 (9th Cir. 2012) (citing Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000)).

It is undisputed that the Arbitration Clause is valid. As an initial matter, however, this Court must determine whether the claims raised fall within the scope of that provision. Moreover, the parties dispute whether the Response Letter constituted a breach or waiver of the Agreement.

A.  Scope of the Agreement

Defendant asserts that plaintiff's claims fall within the purview of the Arbitration Clause because "the first two claims (breach of contract, breach of the duty of good faith) are both contract-based claims [and the] third claim (tortious interference) is likewise predicated upon the contractual relationship between the parties." Def.'s Mem. in Supp. of Mot. Compel Arb. 5, 8-10.

The Court agrees and finds plaintiff's claims fall squarely

Page 7 - OPINION AND ORDER

within the scope of the Agreement. The Arbitration Clause states that "[a]ny dispute . . . shall be resolved by arbitration"; similarly, that provision governs "any dispute, controversy or claim arising out of or in connection with [the] Agreement." Agreement at ¶ 13.10.

Plaintiff's claims unambiguously qualify as "any dispute." Even accepting, however, the more narrow definition, these claims nonetheless constitute a "dispute, controversy or claim arising out of or in connection with [the] Agreement." Plaintiff's claims premised on defendant's breach plainly arise out of the Agreement. Further, the tortious interference claim is contingent upon the same actions that plaintiff alleges to have caused the breach and, as such, has a significant relationship to the Agreement. See Simula, 175 F.3d at 720-21 (construing nearly identical language broadly as encompassing "every dispute between the parties having a significant relationship to the contract and all disputes having their origin in the contract").

Moreover, plaintiff's torious interference claim alleges that defendant frustrated its business relationships by working directly with members of the distribution network. Compl. ¶¶ 15-19. Yet the Agreement governs the extent to which defendant may interact with members of that network. Agreement at ¶ 11.2. The tortious interference claim therefore also arises out of or in connection with the Agreement.

Thus, the remaining issue is whether there exist any contract-based defenses that foreclose enforcement of the

Page 8 - OPINION AND ORDER

Arbitration Clause.

### B. Availability of Contract-Based Defenses

Plaintiff contends that the Response Letter was an explicit refusal to arbitrate. As such, plaintiff argues that, "hav[ing] breached its arbitration agreement," defendant should now be "precluded from relying on that agreement." Pl.'s Resp. to Mot. Compel Arb. 6. Plaintiff relies on Brown in support of this argument. Alternatively, plaintiff asserts that the Response Letter comprised a waiver of the Arbitration Clause.

Conversely, defendant argues that, because plaintiff did not properly initiate arbitration, it cannot now seek to enforce the Agreement. Defendant also asserts that the Response Letter did not constitute a repudiation of the Arbitration Clause or a waiver of that provision. Accordingly, defendant contends that Brown is distinguishable and instead relies on Cox v. Ocean View Hotel Corp., 533 F.3d 1114 (9th Cir. 2008).

#### i. Breach of the Arbitration Clause

It is well-settled that breach or repudiation of a contract by one party excuses nonperformance by the other; however, before reaching the substantive question of whether defendant breached an arbitration agreement, plaintiff must first establish that it properly initiated arbitration. Id. at 1122. If plaintiff cannot establish that it followed the requisite procedures, "then [defendant] could not have repudiated the agreement, regardless of the contents of [the] letter [in which the defendant allegedly refused to arbitrate]." Id.

Page 9 - OPINION AND ORDER

Thus, as a threshold matter, this Court must determine whether plaintiff correctly commenced arbitration. The Arbitration Clause outlines the necessary process. First, the ROA[3] provides, in relevant part, that the party initiating arbitration must "serve upon another party a demand for arbitration . . . stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with." N.Y. CPLR § 7503(c). Second, the Agreement requires the parties to appoint an arbitrator by mutual agreement within thirty days after the receipt of the demand for arbitration; if they are unable to do so, each party must appoint an arbitrator and those arbitrators will then select a third. Agreement at ¶ 13.10.

Plaintiff did not comply with these procedures. Specifically, the Demand Letter failed to inform defendant that it would be deprived of its right to object to plaintiff's compliance with the Arbitration Clause if it neglected do so with twenty days. In fact, the Demand Letter is altogether silent on this issue. See generally Demand Letter.

More importantly, plaintiff did not take any steps towards selecting an arbitrator within the requisite time-frame. After sending the Demand Letter, plaintiff did not seek to further

---

[3] The parties explicitly agreed that arbitration must be commenced in accordance with the ROA. Agreement at ¶ 13.10. Thus, the Agreement incorporates those procedures, even though they were not set forth within the Arbitration Clause. See Cox, 533 F.3d at 1122.

Page 10 - OPINION AND ORDER

arbitrate the dispute; in addition, plaintiff never replied to defendant's Response Letter. Thus, plaintiff's actions suggest that it did not actually intend to arbitrate this matter, as it wholly failed to take any steps towards effectuating that process after sending the Demand Letter. For this additional reason, plaintiff failed to adhere to the Agreement's arbitration procedures.[4] Accordingly, defendant's alleged nonperformance is excused.

As such, plaintiff's reliance on Brown is misplaced. In Brown, plaintiff instituted arbitration in the manner required by the parties' agreement after being terminated for allegedly adding ten minutes to her timecard. Brown, 430 F.3d at 1007-09. She also made numerous attempts over a two month period to initiate arbitration after her former employer refused to respond to her initial request. Id. at 1009. Plaintiff only succeeded in making contact with her former employer once, at which time she was informed that "her complaint had no merit and that [the] employer refused to arbitrate." Id. Plaintiff then filed suit and her former employer moved to compel arbitration. Id. The Ninth Circuit held that plaintiff's employer "breached its agreement with Brown by refusing to participate in the arbitration proceedings

---

[4] Defendant also argues that plaintiff failed to properly commence arbitration because the Demand and Settlement Letters were sent to Itamar-Medical Ltd.'s Israel-based Vice President, Mr. Sharoni, who is not a party to the Agreement. This argument is somewhat disingenuous given that Mr. Sharoni was directly corresponding with defendant throughout the parties' attempts to renegotiate the contract. In any event, the Court declines to further address this argument.

Page 11 - OPINION AND ORDER

Brown initiated"; as such, the court refused to compel arbitration. Id. at 1010-12.

Thus, unlike the present case, Ms. Brown made extensive efforts to commence arbitration and expressly followed the procedures outlined in the parties' arbitration agreement. Therefore, Brown is distinguishable from the case at bar.

Instead, this case is analogous to Cox. In Cox, plaintiff sent a letter to his employer, demanding arbitration, after being accused of having an inappropriate relationship with one of his female subordinates. Cox, 533 F.3d at 1117-18. The employer responded that arbitration was premature. Id. After his subsequent termination, plaintiff filed suit and his former employer moved to compel arbitration. Id. The Ninth Circuit found that plaintiff failed to follow the initiation procedures. Id. at 1122. As "the non-complying party," the court held that plaintiff was unable to "establish that [his former employer] repudiated the arbitration agreement." Id. In so holding, the court expressly discussed Brown and determined that it was distinguishable because the "plaintiff in Brown made heroic efforts to initiate arbitration [whereas] Cox did not comply with the terms of the agreement." Id. at 1123.

Therefore, for the same reasons set forth in Cox, plaintiff here cannot now seek to enforce the terms of the Agreement; as such, the Court finds that plaintiff's non-compliance with the Arbitration Clause's initiation procedures excuses defendant's alleged refusal to arbitrate.

ii. <u>Waiver of the Arbitration Clause</u>

In the alternative, plaintiff asserts that the Response Letter amounted to a waiver of defendant's right to arbitrate the parties' dispute. Plaintiff further contends that this letter, at least, constituted waiver as to its claim for tortious interference.

A party seeking to prove waiver of a right to arbitrate must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." <u>Clyde Bergemann, Inc. v. Sullivan, Higgins & Brion</u>, 2008 WL 4279632, *2 (D.Or. Sept. 18, 2008) (quoting <u>Brown</u>, 430 F.3d at 1012).

As an preliminary matter, it should be noted that, while plaintiff's failure properly to initiate arbitration may make it more difficult to establish waiver, "it does not foreclose [plaintiff's] assertion, as it does in the breach of agreement context discussed above, of waiver by [defendant]. That is because waiver focuses on the actions of the party charged with waiver." <u>Cox</u>, 533 F.3d at 1124-25. Thus, this Court must determine whether defendant "waived its right independently of whether [plaintiff] perfected [its] request for arbitration." <u>Id.</u> at 1125. Regardless, "[a]ny examination of whether the right to compel arbitration has been waived must be conducted in light of the strong federal policy favoring enforcement of arbitration agreements." <u>Fisher v. A.G. Becker Paribas Inc.</u>, 791 F.2d 691, 694 (9th Cir. 1986) (citing <u>Moses</u>, 460 U.S. at 24-25).

Here, the second and third factors do not support waiver. It is undisputed that defendant had knowledge of an existing right to arbitrate. Under the second factor, however, given its belief that the dispute was not yet ripe for arbitration, this Court cannot conclude that defendant's actions were inconsistent with the right to arbitrate. See, e.g., Cox, 533 F.3d at 1125 (citation omitted).

In fact, contrary to plaintiff's assertion, there is nothing in the Response Letter that can be construed as inconsistent with this right because defendant never actually refused to arbitrate. Defendant stated that, in addition to being premature, some of plaintiff's claims may be outside of the scope of the Arbitration Clause. Response Letter at 1. For these reasons, and because the Settlement and Demand Letters contained "mixed messages," defendant interpreted "[plaintiff's] threats of legal action" as "mere posturing." Id. Accordingly, defendant "believe[d] that the energies of both parties would be better spent on finalizing the settlement that has been previously discussed and agreed [to] in principle." Id. Defendant concluded the letter by encouraging further communication between the parties.

Read in its entirety, plaintiff's letter sought to reach an amicable resolution of the parties' dispute, which does not conflict with the right to compel arbitration. Rather, the letter supports defendant's assertion that it was willing to engage in arbitration if the parties' attempts at settlement failed.

Finally, the third factor also favors defendant. As a preliminary matter, defendant did not resort to litigation and

Page 14 - OPINION AND ORDER

acted to invoke arbitration immediately upon learning of plaintiff's actions. Further, plaintiff does not cite to, and this Court is not aware of, any authority holding that costs or delay are sufficient to establish the third element. To the contrary, it is well-settled that costs incurred as the result of litigation do not create prejudice in these circumstances. United Computer Sys., Inc. v. AT&T Corp., 298 F.3d 756, 765 (9th Cir. 2002); see also Batory v. Sears Roebuck & Co., 124 Fed.Appx. 530, 534 (9th Cir. 2005) ("substantial litigation costs [are] insufficient to establish prejudice where proceedings never went past the pleading state").

Moreover, to the extent that the resolution of this dispute has been delayed, it is not evident that this delay should be attributed to defendant rather than to plaintiff, who failed to properly file its claim pursuant to the terms of the Agreement, did not reply to the Response Letter, and neglected to timely select an arbitrator. See, e.g., Cox, 533 F.3d at 1125-26; see also Clyde, 2008 WL 4279632 at *2. Therefore, plaintiff's argument that it was prejudiced by the delay and costs finds no support in the record or under case law.

Accordingly, given the determination that the three factors do not support waiver, and due to the strong federal policy favoring the enforcement of arbitration agreements, the Court finds that defendant did not waive its right to enforce the Arbitration Clause.

## CONCLUSION

Defendant's motion to compel arbitration (doc. 7) is GRANTED. This case is therefore stayed while the parties engage in arbitration pursuant to the terms of the Agreement. Accordingly, the parties' requests for oral argument are DENIED as unnecessary.

IT IS SO ORDERED.

Dated this 13th day of July 2012.

_____
Ann Aiken
United States District Judge